UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:21-cv-178-FDW

| | |
|---|---|
| JENNIFER HARDMAN,<br><br>        Plaintiff,<br><br>v.<br><br>MAIN STREET FINANCIAL GROUP, INC.,<br><br>        Defendant. | **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jennifer Hardman ("Ms. Hardman" or "Plaintiff") hereby files this Amended Complaint and complains and alleges against Defendant Main Street Financial Group, Inc. ("Defendant" or "Main Street") the following:

### INTRODUCTION

1. Plaintiff brings this action against Defendant for discrimination and retaliation based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§2000e *et seq*. ("Title VII").

2. Plaintiff also brings this action against Defendant for discrimination and retaliation based on age in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq*. ("ADEA").

3. Plaintiff also seeks redress for violations of the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq*. ("EPA").

4. Plaintiff also brings this action against Defendant for violations of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq*. ("NCWHA").

5. Plaintiff additionally brings this action against Defendant for violations of the Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-240 *et seq*. ("REDA").

6. Plaintiff further brings this action against Defendant for wrongful discharge in violation of public policy ("WDPP") under N.C. Gen. Stat. § 143-422.1.

7. Upon proper administrative exhaustion (currently still pending), Plaintiff further intends to amend her Complaint to include Defendant's violations of the North Carolina Retaliatory Employment Discrimination Act, N.C. Gen. Stat. § 95-241 *et seq*. ("REDA").

## PARTIES

7. Ms. Hardman is a female and resident of Charlotte, North Carolina.

8. Defendant Main Street Financial Group, Inc., is a North Carolina corporation, registered to do business in North Carolina, with its principal office located at 123 East Main Street, Forest City, North Carolina.

9. Defendant Main Street Financial Group, Inc. employed Ms. Hardman during the relevant time period of events giving rise to this action.

10. Swimmer Insurance Agency, Inc., was a North Carolina corporation, registered to do business in North Carolina, that originally employed Ms. Hardman for some of the events giving rise to this action. Upon information and belief, on January 1, 2019, Swimmer Insurance Agency, Inc. merged with Defendant Main Street Financial Group, Inc.

11. Upon information and belief, at the time of merger, Defendant assumed the liabilities of Swimmer Insurance Agency, Inc., including but not limited to any liability arising from Swimmer's employment of Ms. Hardman.

## JURISDICTION AND VENUE

11. This action arises under federal statutes including Title VII, ADEA, and EPA. This court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e *et. seq.*, because the claims brought herein constitute a federal question under the laws of the United States.

12. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims under the NCWHA, REDA, and WDPP, because they arise out of the same nucleus of operative facts as the federal claims. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was hired to work in this district and Defendant conducts business in this district.

## ADMINISTRATIVE EXHAUSTION

14. Plaintiff has satisfied her obligation to exhaust her administrative remedies by timely filing Charge(s) of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation.

15. Plaintiff filed a charge with the EEOC on July 21, 2020.

16. On January 21, 2021, the EEOC issued a Notice of Right to Sue and Plaintiff timely brought this action within ninety (90) days of her receipt thereof by filing her Complaint on April 21, 2021.

17. Plaintiff filed a REDA claim on or about September 3, 2020. She was issued a right-to-sue letter by the North Carolina Department of Labor on April 21, 2021 and timely files this Amended Complaint to assert her REDA claim within ninety (90) days of receipt thereof.

18. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

## GENERAL ALLEGATIONS

19. On or about November 4, 2004, Ms. Hardman began working for Swimmer Insurance Agency, Inc. ("Swimmer") as a "Claims Advocate/Risk Consultant."

20. For fourteen (14) years in this dual role, Ms. Hardman was paid commission on business that she brought into the agency as a licensed agent and also received a salary for her work as a claims advocate. Ms. Hardman's salary reflected that she was a dual-role employee until she changed positions in 2020.

21. In or about March of 2018, Ms. Hardman began experiencing numbness in her right hand and the pain started to impact her work.

22. In or about September of 2018, staff was notified that Defendant Swimmer would be merging with Defendant Main Street Financial Group, Inc. ("Defendant" or "Main Street").

23. In or about November of 2018, Craig Katzman (of Swimmer and later Main Street) advised Ms. Hardman to file for a workers' compensation claim prior to the merger and added that it would be better to do so before the merger because he was not sure how the new company would perceive the claim.

24. In or about November of 2018, Ms. Hardman's workers' compensation claim was received.

25. In or about December of 2018, in the week prior to the merger, Ms. Hardman was summoned to the office by management for a meeting to discuss her role with the company and a non-compete agreement before the merger was finalized on January 1, 2019.

26. At this meeting, Ms. Hardman was told that her role as a claim advocate, her book of business, and her commission would not change after the merger. She was also told that she would not have a job January 1, 2019 unless she signed the non-compete agreement. Ms. Hardman signed the non-compete.

27. On or about January 1, 2019, Swimmer merged with Main Street.

28. Before and after the merger, Ms. Hardman heard how the merger was going to benefit and be good for the younger employees and new hires.

29. Soon after the transition, Ms. Hardman started experiencing significant issues regarding her paycheck, her field equipment, and disparity in pay and treatment from new incoming coworkers.

30. In February of 2019, Ms. Hardman noticed that her paycheck did not reflect the full pay she was promised based on her agreement pursuant to signing the non-compete agreement.

31. Ms. Hardman brought this issue to the attention of both the Partner/Vice President of Business Development/Business Risk Consultant, Matt Frazier, and Human Resources to which she received no response.

32. Again, on February 19, 2019, Ms. Hardman sent President/Chairman David Swimmer and EVP/Senior Vice President/Partner Craig Katzman an email to complain about the paycheck and never received a response.

33. Ms. Hardman also complained about the missing payments to Daphne Williams, the Director of Finance. Upon information and belief, the matter of the missing payments was then discussed with the partners and the matter was allegedly resolved on or around March 15, 2019.

34. In or around the beginning of 2019, Ms. Hardman was prevented from receiving new accounts into her book of business.

35. Shortly after the merger of Swimmer and Main Street, approximately three (3) producers left the company. The producers also left their existing book of business and clientele in the hands of the company to redistribute to remaining producers at Defendant.

36. Rather than distributing these accounts equally to all producers within Defendant, the accounts were specifically given to the recently hired producers after the merger who were predominantly male as well as younger than Ms. Hardman.

37. On or about June 5, 2019, Ms. Hardman attended a meeting regarding her position with Matt Frazier. Also in attendance at that meeting were David Swimmer and Craig Katzman.

38. At the meeting, Ms. Hardman reiterated a change in her position was contradictory to the company's promises to her in 2018.

39. On or about June 25, 2019, Hardman went out on leave for workers' compensation medical treatment.

40. On or about July 22, 2019, Ms. Hardman returned from leave for workers' compensation medical treatment.

41. In or about Summer of 2019, Ms. Hardman was told she would have to choose whether to be a full-time claims specialist or full-time producer at the start of 2020.

42. During 2019 and 2020, Ms. Hardman repeatedly had to ask management for a new computer and in return got poorly performing replacements, while other producers had state of the art equipment for the field.

43. After Ms. Hardman elected to become a full-time producer beginning in 2020, all of the producers were men, with the exception of Ms. Hardman.

44. In or about January of 2020, Ms. Hardman complained about her pay with respect to the year-end bonus she was entitled to under Defendant's compensation plan. She specifically objected to improper deductions made to her pay with respect to workers' compensation benefits. Ms. Hardman continued her objections in subsequent months.

45. On or about June 23, 2020, Ms. Hardman was terminated by Defendant purportedly for "not being a team player."

46. Defendant's termination justification was pretextual considering just two weeks before, on or about June 11, 2020, Ms. Hardman met with Matt Frazier and there was no mention of any complaints that were made regarding her ability to be a "team player.". At the time of Ms. Hardman's termination, all other employees in her position were male and, upon information and belief, Ms. Hardman was being treated disparately due to her sex.

47. Ms. Hardman therefore believes and avers that Defendant discriminated against her and terminated her due to her sex, age, and/or for making legally protected complaints.

**FIRST CLAIM FOR RELIEF**
**Discrimination and Retaliation on the Basis of Sex**
**Violation of Title VII of the Civil Rights Act of 1964, as amended**

48. The allegations in the foregoing paragraphs are incorporated by reference herein.

49. At all times relevant to this action, Plaintiff was an "employee" covered by the protections of Title VII of the Civil Rights Act of 1964 within the meaning of 42 U.S.C. § 2000e(f).

50. At all relevant times herein, Defendant employed at least 15 employees and both are an "employer" within the meaning of 42 U.S.C. § 2000e(b).

51. In doing the acts alleged above and herein, Defendant discriminated and retaliated against Plaintiff on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

52. Defendant's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Plaintiff in a way that adversely affected her opportunities or status because of her sex; (2) increasing the difficulty of Plaintiff's job by depriving her of the technology and resources that her male counterparts possessed; (3) excluding her from the reallocation of departing employees clients after the merger in 2019; (4) forcing her to accept a new position with reduced pay; and (6) using qualification standards, employment tests, or other selection criteria that screened out or tended to screen out individuals based on sex.

53. Plaintiff genuinely believed Defendant was discriminating based on sex, and her belief was reasonable.

54. Defendant further discriminated against Plaintiff by terminating her on June 23, 2020.

55. As a direct result of said conduct, Plaintiff has suffered lost past and future wages and job benefits and has suffered and will continue to suffer emotional pain, suffering, inconvenience, embarrassment, mental anguish, and other non-pecuniary losses in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Discrimination and Retaliation on the Basis of Age**
**Violation of ADEA, as amended**

56. The allegations in the foregoing paragraphs are incorporated by reference herein.

57. Plaintiff was born in 1963 and was fifty-six (56) years old at the time of her termination.

58. Defendant treated Plaintiff less favorably than substantially younger employees by terminating her employment and replacing her with much younger employees.

59. Defendant violated the ADEA by discriminating against Plaintff in whole or in part because of her age and or in retaliation for her protected activity of opposing age discrimination.

60. Defendant's acts described herein constitute a violation of the Age Discrimination in Employment Act's prohibition against age discrimination.

61. As a proximate result of Defendant's wrongful conduct, Plaintiff has suffered lost wages and benefits, and other damages in an amount to be proven at trial. She is entitled to recover compensatory and liquidated damages in an amount to be proven at trial, including attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**Violation of the Equal Pay Act of 1963, 29 U.S.C. §206 et. seq.**

62. The allegations in the foregoing paragraphs are incorporated by reference herein.

63. Defendant has violated the Equal Pay Act of 1963 by providing Plaintiff with lower pay and compensation than similarly situated younger male employees on the basis of their sex and age, even though Plaintiff performed similar duties requiring the same skill, effort, qualifications, and responsibility as her younger male counterparts.

64. Defendant subjected Plaintiff to discriminatory pay practices and discrimination by depriving her the opportunity to solicit and represent clients and accounts belonging to departing employees at the start of the 2019 calendar year.

65. Plaintiff was not deprived of these opportunities on the basis of seniority, merit, quantity, or quality of production, or factors other than age or sex.

66. Defendant was the cause of the unlawful conduct complained of in this claim.

67. The foregoing conduct constitutes a willful violation of the EPA within the meaning of the statute.

68. As a result of Defendant's conduct as alleged, Plaintiff has suffered, including but not limited to, lost earnings, lost benefits, and other financial loss, and is entitled to statutory, liquidated and other damages.

### FOURTH CLAIM FOR RELIEF
### Violations of the North Carolina Wage and Hour Act

69. The allegations in the foregoing paragraphs are incorporated by reference herein.

70. The violations under this section arise from Defendant's policy and practice of suffering or permitting Plaintiff to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7 and 95-25.13.

71. Defendant violated these statutes by failing to pay Plaintiff all promised and earned wages on the employees' regular payday for all hours worked.

72. Further, Defendant violated the NCWHA by unlawfully withholding or deducting wages in violation of N.C. Gen. Stat. §95-25.8 because Plaintiff never provided a written authorization to deduct any amount from her wages. Defendant never provided advance notice of the deduction.

73. Defendant willfully violated Plaintiff's rights under the NCWHA.

74. As a result of Defendant's willful action, Plaintiff is entitled to recover liquidated damages pursuant to N.C. Gen. Stat. § 95-25.22.

### FIFTH CLAIM FOR RELIEF
### Violations of the Retaliatory Emoloyment Discrimination Act

75. The allegations in the foregoing paragraphs are incorporated by reference herein.

76. At all relevant times, Plaintiff was an "employee" of Defendant as that term is defined by REDA.

77. At all relevant times, Defendant was, and is a "person" as the term is defined by REDA.

78. During her employment with Defendant, Plaintiff engaged in protected activity and (i) filed a claim or complaint, (ii) initiated an inquiry, investigation, inspection, or proceeding, and (iii) testified or provided information to a person regarding violations of the NCWHA as alleged herein and also filed a claim under the North Carolina Workers' Compensation Act ("NCWCA").

79. Plaintiff was terminated in retaliation for engaging in protected activity concerning the NCWHA and the NCWCA.

80. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

81. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover treble damages in an amount to be determined at trial.

82. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

### SIXTH CLAIM FOR RELIEF
**North Carolina Wrongful Discharge in Violation of Public Policy**

83. The allegations in the foregoing paragraphs are incorporated by reference herein.

84. The public policy of North Carolina, as set forth in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et seq*. ("NCEEPA") states, "[i]t is the

11
Case 3:21-cv-00178-FDW-DSC   Document 7   Filed 06/09/21   Page 11 of 14

public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account . . . age [or] . . . sex."

85. Defendant violated the public policy of North Carolina by terminating Plaintiff based on her age, sex, and/or protected conduct.

86. The public policy of North Carolina, as set forth in the REDA, N.C. Gen. Stat. § 95-240 et seq. states, "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to [engage in protected activity]."

87. Defendant violated the public police of North Carolina by terminating Plaintiff for engaging in protected activity under the NCWHA and NCWCA as described herein.

88.

89. Defendant violated the public policy by terminating Plaintiff after she exercised her rights and in good faith opposed what she viewed as injurious conduct as set forth in the paragraphs above.

90. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, emotional distress, anxiety, humiliation, expenses, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

91. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

92. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Hardman demands the following relief:

1. An Order awarding Ms. Hardman damages for Defendant's violation of Title VII of the Civil Rights Act of 1964, including backpay, lost wages, employment benefits, punitive damages, and any other compensation denied or lost because of Defendant's violation of Title VII of the Civil Rights Act of 1964;

2. An Order awarding Ms. Hardman damages for Defendant's violation of the ADEA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the ADEA;

3. An Order awarding Ms. Hardman damages for Defendant's violation of the EPA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the EPA;

4. An Order awarding Ms. Hardman damages for Defendant's violation of the NCWHA, including backpay, front pay, lost employment benefits, and any other compensation denied or lost because of Defendant's violation of the NCWHA;

5. An Order awarding Ms. Hardman damages for Defendant's violation of REDA, including backpay, front pay, lost employment benefits, and other compensation denied or lost because of Defendant's violation of REDA and treble damages pursuant to N.C. Gen. Stat. § 95-243 *et seq.*.

6. An Order awarding Ms. Hardman compensatory damages for emotional distress, pain and suffering, inconvenience, and/or mental anguish in an amount to be proven at trial;

7. An Order awarding Ms. Hardman punitive damages under N.C. Gen. Stat. § 1D-115 in an amount to be proven at trial;

8. An Order awarding Ms. Hardman the costs of this action;

9. An Order awarding Ms. Hardman reasonable attorneys' fees;

10. An Order awarding Ms. Hardman prejudgment and post-judgment interest at the highest rates allowed by law; and

11. An Order granting any other necessary or appropriate relief to which Ms. Hardman is entitled under the law.

## JURY TRIAL DEMAND

Ms. Hardman demands a trial by jury.

*/s/ L. Michelle Gessner*
L. Michelle Gessner, NC State Bar No. 26590
Nicole K. Haynes, NC State Bar No. 47793
John G. Hutchens, III, NC State Bar No. 52214
GESSNERLAW, PLLC
602 East Morehead Street
G.G. Galloway House
Charlotte, North Carolina 28202
Telephone: (704) 234-7442; Fax: (980) 206-0286
E-Mail: michelle@mgessnerlaw.com
nicole@mgessnerlaw.com
johnny@mgessnerlaw.com

*Attorneys for Plaintiff*